IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : CASE No: 1:17-CR-00090-1 |
| | : |
| v. | : (Chief Judge Conner) |
| | : |
| | : (Electronically Filed) |
| FRED CROWDER, III | : |

## SENTENCING MEMORANDUM

Through counsel, Fred Crowder, files the following Sentencing Memorandum and sets forth factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a). For the reasons set forth below, Mr. Crowder is respectfully requesting this Honorable Court sentence him to the bottom end of the sentencing guideline and run his sentence concurrent to his now complete York county sentence for distributing a small amount of crack cocaine pursuant to USSG 5G1.3(c). Such a sentence is sufficient to achieve the four purposes of sentencing: retribution, deterrence, incapacitation, and rehabilitation per 18 U.S.C. § 3553(a).

**I.     Procedural Background**

By an Indictment dated March 29, 2017, Mr. Crowder, was charged in a one count indictment as follows: Count 1, Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1), 924(a)(2) and 924(e). On April 11, 2019, the defendant pled guilty.

Pursuant to a written plea agreement, Mr. Crowder waived his appellate rights if his sentence is within or below his guideline imprisonment range.

## II.     SENTENCING GUIDELINE CALCULATIONS

Mr. Crowder plead guilty to Count 1 of the indictment which has a base offense level of 20 as applied to him. Mr. Crowder has a Criminal History Category score of VI. A total offense level of 17 applies to Mr. Crowder's matter after a three level reduction for acceptance of responsibility. The resulting guideline imprisonment range is 51 to 63 months. Had Mr. Crowder also been indicted for his conduct in delivering less than 2.8 grams of cocaine base during the same time period as the instant offense, his guideline sentencing range would remain the same as he counts would group and the highest offense level (20-firearm) would apply. USSG 2D1.1, 3D1.2, 3D1.3[1]

## III.    Sentencing Factors

Mr. Crowder accepts responsibility and acknowledges the seriousness of his actions. However, he also respectfully asks that the Court take into account not only the circumstances that led to his involvement in this activity, but also his

---

[1] Mr. Crowder delivered a small amount of cocaine base a few weeks before the instant offense. A base offense level of 12 applies where the amount of cocaine base is less than 2.8 grams. USSG 2D1.1 Even applying a 2 level enhancement for the firearm, the total offense level would be 14.

personal history and characteristics, which brought him before the Court. The primary directive in Section 3553(a) is that the Court must impose a sentence that is sufficient, *but not greater than necessary,* to comply with the purposes of sentencing. Those purposes according to 18 U.S.C. 3553(a)(2) include the need:

    A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    B)    to afford adequate deterrence to criminal conduct;

    C)    to protect the public from further crimes of the defendant; and

    D)    to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Section 3553(a) further directs sentencing courts to consider the following factors:

    (1) the nature and circumstances of the offense and the history and characteristics of the Defendant; (Section 3553(a)(1));

    (2) the kinds of sentences available; (Section 3553(a)(3));

    (3) the guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline ranges; (Section 3553(a)(4));

    (4) the need to avoid unwarranted sentencing disparity among defendants with similar records that have been found guilty of similar conduct; (Section 3553(a)(6)).

Moreover, pursuant to 18 U.S.C. § 3582, the imposition of a term of imprisonment is subject to the following limitation: in determining whether and

to what extent imprisonment is appropriate based on the factors in 18 U.S.C. § 3553 (a), the sentencing court is required to "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation". 18 U.S.C. § 3582.

## IV.  SENTENCING

Mr. Crowder was arrested in connection with Operation "Gun Grabber" in York, PA. His current crime is felon in possession of a firearm but it is unlikely that he ever would have found himself providing a shotgun to his crack dealer for drug money, were it not for the tragic and ruinous role that drugs and alcohol have played in his life. Ironically, Mr. Crowder was addicted to crack cocaine and heroin, a daily intravenously user, when he was approached by his crack dealer and asked whether he could procure a gun for him.

The difficulty and struggles Mr. Crowder has faced as an adult are so significant, that by comparison, he describes a pretty tragic childhood as "cool," because his basic needs were generally met. In November, 1984, Fred Crowder was born in Atlantic City, New Jersey. His biological father was never a part of his life and he was raised as the oldest of three children to Robert Lee Dixon Jr. and Susan Marie Glacken. Dixon and his mother never married and separately permanently when he was five years old.

Mr. Crowder was subjected to physical abuse beginning and emotional trauma at a very early age. He was first abandoned by his mother at the age of five. In the late 80s and early 90's, cell phones were rare and long distance calling was expensive. Children, especially young children, do not have the ability to process adult relationships and can feel abandoned when parents separate. When one parent moves several hours away and loses contact, they are justified in feeling abandoned. He was left with the father of his half siblings until age 10, when he believed his dreams were coming true as he was going to get to live with his mom, who was then living in Gettysburg, PA.

The second time his mother abandoned him, Mr. Crowder was ten years old. Shortly after moving in with his mother, she had him placed in a juvenile facility where he remained for a year. Thereafter, she raised him "on and off." Children and Youth no longer has the records from Mr. Crowder's youth due to age. As an adult, ashamed of his life choices, hoping to foster an ongoing relationship with his mother, he lays blame on his ten year old shoulders saying he was "too much" for his mom to handle. He was ten and lived with her only a short while before she gave up. It is important to keep in mind that Mr. Crowder's earliest experience with the "system" was that of a juvenile in need of shelter.

Unfortunately, the fallout from Mr. Crowder's childhood and adolescence manifested itself in substance abuse and criminality to support that substance

abuse. Once eighteen, he aged out of residential dependency services. With little support structure, Mr. Crowder began accumulating enough criminal history points to be classified with a criminal history category of VI.[2] That being said, he did it the hard way. He has three points from an event that occurred over sixteen years ago, when he was eighteen. Desperate for money, he agreed to go along with two older boys when they went to a residence in Carlisle, PA to steal marijuana and money. Mr. Crowder waited with the car outside while the two others stole to marijuana and money from the occupied home. He was sentenced to 1 to 4 years. His inability to stay clean led to his parole being revoked twice.

    Mr. Crowder's next three points came following a conviction in Adams County where he was originally sentenced to serve 3 to 23 months for helping another try to convert coins that Mr. Crowder knew had been stolen to modern money. Mr. Crowder had his parole revoked numerous times as he was unable to stay clean.

    Mr. Crowder's next two points come from a paraphernalia conviction in 2015 where he had a syringe to inject suboxone. His original sentence was 1 to 12 months. His addiction brought him back for several revocations.

---

[2] Mr. Crowder's conviction for Possession of Drug paraphernalia in York at 6727-CR-2015 is improperly scored at three points instead of two (USSG 4A1.1(b)) as the maximum punishment under Pennsylvania law is one year. This does not affect his criminal history category.

Two paraphernalia possession charges in 2015 and 2016 added two more points for a total of ten points.

In January 2017, after the events of the instant offense, Mr. Crowder was charged with delivering a small quantity of crack cocaine in December 2016. He was acting as a middleman and keeping a portion of the drugs he purchased from his dealer on behalf a third person. His counsel in York County not understanding the admittedly complicated federal sentencing guidelines, informed Mr. Crowder a conviction there would not affect his guideline sentence in the instant matter. The one to two year sentence he received added three points for a total of 13. The final two points are added because Mr. Crowder was on probation for a drug paraphernalia charge. His 15 points fall into Criminal History Category VI. In fairness, there are several unpointed offenses over the last several years before Mr. Crowder's arrest. They are mainly for defiant trespass convictions with an occasional paraphernalia charge. Mr. Crowder was often homeless and would squat in abandoned properties when he had nowhere else to go. Although certainly criminal, they speak more to Mr. Crowder's addiction and desperation than they suggest seriousness of his criminal history.

Each and every conviction is directly linked to Mr. Crowder's drug addiction. Treating his disease is the key to Mr. Crowder's long-term ability to lead a productive, sober, crime free life. Today, Mr. Crowder has 34 months clean.

Sure, he has been incarcerated during that time, but drugs sadly can be found in jails and prisons everywhere. Mr. Crowder made a commitment to his sobriety to himself, for himself, and for his family. He is interested in participating in the RDAP program and other treatment options, understanding that it is important to have strategies, structure, and support in order to stay clean.

In concert with treating his addiction, Mr. Crowder is aware that he needs to address his emotional issues. His biological father disappeared before he was born, never having returned to see his son, to hug him and say he loved him, or to even try to explain why he left him. Just because Mr. Crowder never met his biological father, doesn't mean that he doesn't think of him or that he hasn't had a profound and damaging effect on his life. Mr. Crowder has not lead a perfect life, but neither has life been anywhere near perfect for him.

As an adult, one understands that Mr. Crowder's mother left the family when he was five as a result of her own issues. As a child abandoned by his mother, the picture is never so clear. At best, your mother chose everything else over you, at worst, she left because of you. One can tell a child, an adolescent, and a young adult time and time again that it wasn't their fault that their mom left, that their mom didn't really want to leave them but had her own issues, but they won't believe you. Mr. Crowder certainly didn't believe it when he was five. To the extent he might have harbored secret hopes that she really did love him, she

snuffed those out when she surrendered him at 10 to CYS. What might his life have been like had his mother be able to raise him more than "off and on"? Like anyone, Mr. Crowder wants a relationship with his family. And like many adult children of abusive or neglectful parents, he loves his mother and stepfather and seeks the same in return. He does not rock the boat with past to them, but realizes he needs to get some help to deal with those issues in the past.

In addition to the loss suffered as a child, as a young man, he suffered the loss if his younger brother to suicide or homicide, depending on who you ask. Mr. Crowder was very close to his brother, calling the 6'7" young man his "big, little brother." When he felt he had no one else, he had his brother. The loss is still very sharp today. The difference that 34 months of sobriety has made is that is allowed Mr. Crowder to finally begin to talk about his feelings and process his emotions with child's mother. Sadly, the young woman is the person who found his brother hanging in the shed. Mr. Crowder relates, that throughout the years of his addiction, his mind was so scattered that he could not have a meaningful conversation about his brother, his thoughts racing away from the tragedy.

Over the last few years, he has been able to reflect and finally open up to his paramour. They are hopeful they can begin to forge a life together with their family once Mr. Crowder is released. In the throes of his addiction, Mr. Crowder was a mess. Emotionally and mentally unavailable, he kept his distance, embarrassed and

ashamed of his addiction, not wanting to expose her and their daughter to this version of himself. Now clean, Mr. Crowder is rebuilding his relationships with his children. His daughter just turned 13. Very artistic, Mr. Crowder's daughter asked him to make her a drawing for her birthday. Using the precious little commissary money he had, Mr. Crowder purchased a clothing item from which he tore a nice square of fabric on which to draw so her birthday present would be different and special. He drew a baby Minnie Mouse with "Daddy's Little Girl" as a caption. He worked on this in the dayroom in the jail at Adams County for several days under the supervision of staff members. Unfortunately, Mr. Crowder had it in his cell waiting until her birthday drew closer so it would arrive timely. It was confiscated by staff during a routine search of his cell as contraband. Mr. Crowder, surprised at the designation as contraband asked whether he could mail it to his daughter as planned rather than have it destroyed. That request was denied and the gift destroyed. The PSR notes that Mr. Crowder has had five write ups since being in Adams County Correctional. While true, it is also true that he had no behavioral problems in the state correctional facility or other county jails.

### V.     Request for Concurrent Sentence Pursuant to USSG 5G1.3(c)

Mr. Crowder respectfully requests the Court make the sentence in this matter concurrent to the one to two year sentence he served at York County for delivering a small quantity of cocaine base, docketed at 1740 CR 2017.  Mr. Crowder deliver

the crack in late December, two weeks later he committed the instant offense. He was not charged with either offense until January 31, 2017 when he was charged with the drug delivery. Mr. Crowder's addiction was in full swing at the time and the middleman delivery of crack could certainly be considered relevant conduct to the instant offense. The guidelines instruct that where subsection (a) of USSG 5G1.3 does not apply and a state prison sentence for relevant conduct is anticipated, that the federal sentence shall be imposed to run concurrently to the anticipated term of imprisonment. This case is unique in that the state case plead and was sentenced prior to the federal matter, thus, Mr. Crowder has already served his entire state prison sentence of 1 to 2 years for the relevant conduct of the small drug delivery. Technically, the state term of imprisonment is a fait accompli rather than "anticipated," but the spirit of the guide mandates a concurrent rather than a consecutive sentence. 18 U.S.C. 3585 governs the amount of jail time credited to a federally sentenced inmate. "Defendant shall be given credit toward the service of a term of imprisonment time he has spent in official detention prior to the date the sentence commences - - (1) as a result of the offense for which the sentence was imposed... that has not been credited against another sentence."
18 U.S.C. § 3585(b). The Bureau of Prison will not give Mr. Crowder time credit for any time he served on the state drug case unless the Court orders that the federal sentence is concurrent to the state sentence.

Buttressing Mr. Crowder's request for a concurrent sentence is the fact that had the drug charge been added to the present Indictment, his guideline sentence range would remain the same.

**Conclusion**

Mr. Crowder respectfully suggests that a sentence at the bottom of the standard range, run concurrently with his state charge is sufficient but not greater than necessary to satisfy the sentencing mandates of 18 U.S.C. § 3553(a).

Respectfully submitted,

Date: December 13, 2019

s/ Elisabeth K. H. Pasqualini
Shaffer & Engle Law Offices, LLC
2205 Forest Hills Drive, Suite 10
Harrisburg, PA 17112
Attorney ID# 201665
Tel. No. (717) 545-3032
Fax No. (717) 545-3083
*Attorney for Fred Crowder*

## **CERTIFICATE OF SERVICE**

I, Elisabeth K. H. Pasqualini, Esquire, do hereby certify that I served a copy of the foregoing Sentencing Memorandum, via Electronic Case Filing, addressed to the following:

>Kim Daniel, Esquire
>Assistant United States Attorney
>228 Walnut Street
>Harrisburg, PA 17101
>Kim.Daniel@usdoj.gov

>Respectfully submitted,

Date:  December 13, 2019

>/s/ Elisabeth K. H. Pasqualini
>Shaffer & Engle Law Offices, LLC
>2205 Forest Hills Drive, Suite 10
>Harrisburg, PA 17112
>Attorney ID# 201665
>Tel. No. (717) 545-3032
>Fax. No. (717) 545-3083
>elisabeth@shafferengle.com
>*Attorney for Fred Crowder*